## PENNSYLVANIA CO. v. ZAHNER METAL SASH & DOOR CO. et al.

(Circuit Court of Appeals, Sixth Circuit.   June 17, 1921.)

No. 3448.

**1. Appeal and error ☞930(4)—Verdict presumed to respond to instructions and proof.**

Where, in an action to recover for loss of property by fire, defendant was charged with two acts of negligence, one of which would render it liable for the entire loss, and the other for only part of the loss, as the jury were instructed, and the verdict was for a sum much less than the entire loss, as shown by the evidence but approximately the amount claimed under the second cause of action, it must be presumed to have been based on that cause alone.

**2. Railroads ☞222(5)—Negligence in cutting fire hose proved.**

The finding of a jury that employés of a railroad company negligently ran a train over fire hose laid across the track, and that but for the cutting of the hose a building adjoining the one then on fire would have been saved, held supported by evidence.

**8. Negligence ☞134(2)—Provable by circumstantial evidence.**

Where an allegation that plaintiff sustained injuries by reason of the negligence of defendant is not susceptible of direct proof, it may be sus-

tained by proof of circumstances from which the fact that his injuries were so sustained is a more natural inference than any other.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action at law by the Zahner Metal Sash & Door Company and others against the Pennsylvania Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

The Zahner Metal Sash & Door Company brought an action in the state court of Ohio against the Pennsylvania Company to recover $476,000 damages resulting from the destruction by fire of plaintiff's factory, theretofore located near the city of Canton, Ohio, and in proximity to the railroad tracks of the Pennsylvania Company. The plaintiff relied for recovery upon two assignments of negligence on the part of the Pennsylvania Company: (1) That the fire was caused by sparks thrown upon the roof of the factory building by one of defendant's passing locomotives. (2) In so negligently operating one of its passenger trains during the progress of the fire that the line of hose laid by the city fire department across the tracks of the defendant was cut by this passing train at a time when, had the hose not been so cut, the fire could, and probably would, have been so controlled and arrested as to have saved from destruction the greater part of the plant and property of the Zahner Company.

The several insurance companies that were joined as plaintiffs with the Zahner Metal Sash & Door Company had, prior to the commencement of this suit, paid to that company various sums upon several policies of insurance covering this property, and they ask to be subrogated to the rights of the Zahner Company to the extent of the respective amount paid by each. Upon petition of the defendant the cause was removed to the District Court of the United States, Northern District, Eastern Division of Ohio, in which court the defendant answered, admitting that defendant's factory had been destroyed by fire, and that the hose had been cut by one of its trains; but it denied that the fire had been caused by sparks or cinders from one of its locomotives, and denied it was negligent in reference to the cutting of the hose, and denied that the cutting of the hose was the cause of any proximate damage to the plaintiff.

The plaintiff offered evidence tending to prove that the actual damages occasioned to it by reason of the destruction by fire of its factory and contents was in excess of $476,000, the amount named in the petition. At the close of plaintiff's evidence the defendant moved the court to take from the consideration of the jury the question of defendant's alleged negligence in cutting the hose, for the reason that there was no evidence in the case from which the jury could determine with any degree of certainty the extent to which the plaintiff had been damaged thereby. The court then permitted plaintiff to offer further evidence as to the amount of damages to the two-story part of its building and contents thereof, which plaintiff claimed could have been prevented from burning if the hose had not been cut. This evidence tended to prove that the value of this building and contents was about $110,000. There is further evidence that there was a salvage of personal property of the value of about $40,000 from this part of the factory. After the introduction of this evidence the court overruled defendant's motion to take this second ground of recovery from the jury. At the close of all the evidence the defendant requested the court to instruct the jury to return a verdict for it on both grounds upon which the recovery was sought, which motion the court overruled. Thereupon the defendant requested the court to instruct the jury that there could be no recovery upon the charge of negligence in reference to cutting the hose, which instruction the court also refused.

The court in its general charge instructed the jury in substance that, if the fire was caused by sparks from defendant's engines, the plaintiff was entitled to recover the full amount of the damages it had suffered by reason thereof. It further instructed the jury that, if it found against the plaintiff

upon the question of the fire having been communicated to this factory by fire from defendant's locomotives, but found in favor of the plaintiff upon the second theory of recovery in reference to the cutting of the fire hose, then that the recovery of the plaintiff should be limited to the value of the two-story building and contents, less the salvage of $40,000. The jury returned a verdict for the plaintiff in the sum of $60,000. Motion for new trial was overruled, and judgment entered upon this verdict. It is now contended upon the part of the plaintiff in error that the verdict of the jury was based solely upon this second assignment of negligence in reference to the cutting of the hose by the defendant's passenger train, and reversal of this judgment is asked for the reason that there is no evidence in this record to show: (1) That the defendant was negligent in the operation of the train that cut the hose. (2) That the cutting of the hose was the proximate cause of any damage to plaintiff. (3) That if there was any damage caused to the plaintiff by the cutting of this hose, that there was no evidence offered that would enable the jury to ascertain and segregate this damage from the total loss occasioned by the fire, and that its verdict in that respect is based upon mere speculation.

On the other hand it is insisted by the defendant in error that the verdict of the jury is fully sustained by the evidence upon either or both assignments of negligence; that the verdict is a general verdict, and that therefore the claim on the part of the plaintiff that this verdict is based solely upon the second assignment of negligence is merely conjecture.

W. C. Boyle, of Cleveland, Ohio, and John C. Welty, of Canton, Ohio (McCarty, Armstrong & Kinnison, and Welty & Burt, all of Canton, Ohio, and Squire, Sanders & Dempsey, of Cleveland, Ohio, on the brief), for plaintiff in error.

Horace Andrews, of Cleveland, Ohio, and Thomas F. Turner, of Canton, Ohio (Webber & Turner, of Canton, Ohio, and J. W. Mooney and G. E. Bibbee, both of Columbus, Ohio, on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge (after stating the facts as above). [1] The presumption obtains that the jury understood the charge of the court, and that it applied that charge to the facts found by it. Under this charge, and the evidence in relation to the total loss sustained by the plaintiff, if the jury had found that the fire was occasioned by sparks communicated to the building from the defendant's engine, the verdict of the jury would necessarily have been for an amount approximating the amount claimed in the petition. · It is therefore, from this record, practically beyond dispute that the verdict of the jury is based upon the second averment of negligence in reference to the cutting of the hose; otherwise, that verdict is not an intelligent response, either to the evidence or the charge of the court, but it is wholly consistent with the evidence and the charge of the court upon the second assignment of negligence. For this reason, if this verdict and judgment are to be sustained, they must be sustained upon evidence relating to the second assignment of negligence only, and to that part of the total loss, if any, occasioned by such negligence. The finding of the jury in favor of the plaintiff upon issues of fact is binding upon this court, if there is any substantial evidence to support that finding. This court has no authority to determine the question of the weight of the evidence.

[2] There is evidence in this record that the engineer knew of this fire when he was quite a distance away from it, but, of course, he could not be sure of its exact location in reference to the railway tracks until he had approached so near that he might by the exercise of ordinary care determine that fact with reasonable certainty. His train was moving at about 12 miles an hour. The smoke from this fire enveloped the railroad tracks upon which this train was approaching, so that it was necessary for him and his fireman to exercise a high degree of care and caution in observing and correctly interpreting the block signals. There is evidence in this record that the chief of the fire department ordered lanterns to be placed upon the track to signal the oncoming trains; that after this was done he observed that the lanterns were too near to the place where the hose crossed the track and ordered them removed to a greater distance; that one of the firemen, in obedience to this order, started in the direction of the lanterns, but this fireman was not called as a witness. Mesnar, the fire chief, testified that, shortly after he had given the order to remove the lanterns, he—

"looked, and I thought they were pretty far, and I was satisfied. The west lantern was over near to the end of the building on the track, and the other two to the east were very near down to the pump on Vine street."

Jacobs, one of the fire captains, testified that—

"There were lanterns set up there. I saw a man down there with a lantern. I saw pieces of lantern picked up that had been knocked off by the engine—I don't know how far. I know I saw a man down there with a red lantern. I saw the broken red lantern that had been picked up after the engine had knocked it off the track."

There is also evidence in this record that as the train approached some of the firemen ran down the track waving lanterns. The plaintiff also offered evidence tending to prove that the firemen and bystanders could see the train for a considerable distance, and that the track was perfectly straight for at least three-quarters of a mile eastward.

Upon this issue of notice to the defendant company the court charged as follows:

"The defendant is not liable merely because of the want of ordinary care or reasonable diligence on the part of such employés in discovering or failing to discover or observe the presence of hose on the track. Defendant's servants are not to be charged with negligence, and defendant's conduct made wrongful, by reason of the want of ordinary care in failing to look out for and observe the hose. Their duty to exercise ordinary care in stopping the train to avoid cutting the hose arises only after they had such actual or imputed notice or warning of the probable presence of hose on the track. * * * Such knowledge may be imputed to them, if you find the trainmen had knowledge of other facts with regard to the existence of the fire, its presence and location, signals given, if any, by warning, lanterns, or otherwise, the presence and activity of firemen, and other facts from which persons of their experience and intelligence should and would have realized the probable presence of hose lines crossing the tracks of the defendant railway company."

This charge fairly states the law applicable to this issue and the finding of the jury in that respect is sustained by some substantial evidence.

There is not, and in the very nature of things there could not be, any direct and positive evidence that, but for the cutting of the hose, the

firemen would have been able to arrest the fire before it destroyed the two-story part of the factory building. From the evidence it appears that this factory building was substantially parallel to the defendant's right of way and a little north thereof. It was 465 feet long, and varied in width from 80 to 140 feet. The west end, about 260 feet in length, where the fire originated, was one story in height. The east end, about 205 feet in length, was two stories. The entire lower floor of both the one-story and the two-story parts of this factory was not divided by any partition. It is claimed, however, that the two-story part was constructed largely of fireproof material and was believed to be fireproof.

There is a serious conflict in the evidence as to whether water was being thrown through these hose upon the fire, at the time they were cut by this train. Without attempting to determine the weight of the evidence upon this subject, it would appear altogether probable that no water was then being thrown, for the reason that the force from the hydrant was not sufficient to throw water such a distance, and some delay had been occasioned in connecting the hose to the fire engine. There is a direct conflict in the evidence as to the exact location of the fire at this particular time. There is, however, some substantial evidence that the fire had not yet reached the two-story building. One of the witnesses estimated the delay occasioned by the necessity of substituting a new section of hose for the one that was cut at 3 minutes, another at 30; but the majority of witnesses vary in their estimates from 5 to 25 minutes. It was for the jury to say whether this delay was for the inconsequential time of 3 minutes, or for the more substantial time estimated by other witnesses. The jury evidently reached the conclusion that the delay occasioned by the cutting of these hose was for such a substantial time as to permit the fire to get under such headway that it could no longer be checked by the efforts of the firemen. In reference to the conflict of the evidence as to the exact location of the fire in the factory at the time the hose were cut, the court charged the jury that:

"Unless you find from a preponderance of the evidence that, except for the cutting of the fire hose, the progress of the fire would have been arrested without entering into and burning and destroying any substantial part of the second-story building and its contents, the plaintiffs cannot recover anything on this second theory of liability. Unless you do so find, there is no evidence here tending to show that the fire might have been arrested after substantially entering the second-story part of the building at any time earlier than it was arrested, or at least at any time early enough to have prevented any damage which so far as the evidence here shows can be separated with reasonable certainty from the damage which would have been done."

[3] The jury, therefore, was fully advised that, if the fire at that time had entered upon the second-story building, the plaintiffs could not recover. It necessarily follows from this instruction that the jury found that the fire, when the hose was cut, was still confined to the one-story part of this building, and that the progress of the fire would have been arrested without entering into and burning and destroying any substantial part of the two-story building and its contents, except for the cutting of this hose. That finding is sustained by some substantial evidence. It is, of course, true that the question of whether

the progress of the fire might have been arrested or not cannot be apodictically established, nor is that question susceptible of direct proof; but, in the absence of such direct evidence, an allegation that one sustains injuries by reason of the negligence of another is sustained by proof of circumstances from which the fact that his injuries were so sustained is a more natural inference than any other. Railway Co. v. Andrews, Adm'r, 58 Ohio St. 426, 51 N. E. 26.

This doctrine also applies to the further question in this case as to the amount of damages sustained by this plaintiff, if any, by reason of the cutting of the hose. The trial court also very carefully instructed the jury upon this question, that in this case is a difficult and delicate one. In reference to this the court said:

"The inquiry there is limited to whether or not, had the fire hose not been cut, the fire would have been arrested before it substantially entered the second-story part of the building. Unless you can say from a preponderance of the evidence and with reasonable certainty that the progress of the fire would have been thus arrested, then you will proceed to consider no further defendant's liability under the second theory. I am saying that for the reason that the evidence here is so uncertain and indefinite that it would be pure guess-work and speculation upon your part to undertake to say when the fire could have been arrested, if it could not have been arrested before it reached the second-story building. * * * The plaintiff has offered no evidence which would permit you to make a finding as to what damages were the direct and proximate result of the fire on this theory of liability, unless your finding should be that the fire could and would have been arrested before it entered the second-story building."

While there is in this record a serious conflict of the evidence touching, not only the question of the negligence of the railroad company in cutting this hose, but also in reference to the delay occasioned thereby, the location of the fire in the factory at that time, and the probability that, if the hose had not been cut, the progress of the fire could have been arrested before it reached the second-story building, nevertheless the jury, before it arrived at the question of damages, must necessarily have reached a conclusion upon all these questions adverse to the defendant. In other words, this verdict means, if it means anything, that the jury found: (1) That the defendant was guilty of negligence in the operation of this train in the particulars stated in the petition. (2) That this negligence resulted in cutting the fire hose. (3) That the delay occasioned thereby was substantial in its nature. (4) That but for such delay the firemen would have been able to have arrested the progress of the fire before it reached the two-story part of this building.

While beyond question the evidence offered on the part of the plaintiff in error tends strongly to show that there was no negligence whatever on the part of its engineer in the operation of this train; that the delay occasioned by the cutting of the hose was so trifling as to be inconsequential; that no water was thrown before the hose was cut, and none for some little time after a new section of hose was substituted for the one destroyed; that at the time the hose was cut the fire had already entered into the second-story part of this building and was practically beyond control; and counsel for plaintiff in error has so persuasively argued the effect of this evidence that the court approached the in-

vestigation and examination of this record upon these questions of fact with a mind favorably inclined to the claims of counsel as to the absolute and overwhelming effect of this evidence, nevertheless, it does appear from an investigation of this record that there is some evidence of a positive and direct nature, as well as circumstantial, that is sufficient under the statute authorizing this review to sustain the verdict of the jury upon all these questions preliminary to the determination of the amount of damages the plaintiff should recover. Especially is this true in view of the plain, unambiguous, and positive instructions of the court as to the facts the jury must first find before the plaintiff would be entitled to recover upon this second assignment of negligence.

These facts once established by the verdict of the jury, it follows that there is a clear and intelligent theory upon which the jury might proceed to separate the damages occasioned by the cutting of the hose from the total damages caused by the fire. The trial court properly and positively instructed the jury that, before it could return any verdict upon this assignment of negligence it must find that the damages occasioned by the burning of the second-story part of this factory and contents was the direct result of the negligence of the defendant resulting in the cutting of these hose. The evidence shows that the value of this building and contents was about $110,000. The jury, of course, did not have to accept that evidence at its full face value; that the value of the property salvaged was $40,000. The verdict for $60,000 is fairly responsive to that evidence and cannot be said to be based upon mere conjecture.

For the reasons above stated, the judgment of the District Court is affirmed.